No. 4228

Second Circuit

(First Division)

——

DUPUIS v. DAVIS

——

(February 16, 1932.  Opinion and Decree.)

——

Argued before DREW, McGREGOR and CULPEPPER, JJ.

Gremillion & Moreau, of Marksville, attorneys for plaintiff, appellant.

Joffrion & Bordelon, of Marksville, attorneys for defendant, appellee.

CULPEPPER, J. This is an action in damages for alleged failure by defendant to deliver movables sold to plaintiff, embracing the value of the articles themselves, and for expenses incurred, worry and vexation, time lost, etc., in an effort to secure delivery, and for attorneys' fees in prosecuting the suit. From a judgment rejecting his demands, plaintiff has appealed.

The property involved had belonged to defendant's father, and upon his death, a short time previous, defendant acquired same at administrator's sale of her father's estate. It appears that defendant was not very well informed as to the exact quantity and number of articles which constituted a portion of the property, particularly certain tools, etc., as they had all been kept on the late premises of her father near Lake Long in Avoyelles parish, some eighteen or nineteen miles from Marksville, and a Mr. Henry St. Romain, up until about the time the alleged sale took place, had been taking care of the premises and property to prevent depredations and pilfering; while defendant, whose home was in Oklahoma, had been residing temporarily in Marksville looking after the winding up of her father's estate.

Plaintiff, having been informed by some one other than defendant, so he testified, that defendant desired to sell some tools and a plane attachment that goes with a gasoline engine, and being specially desirous of such plane attachment for use in dressing lumber, he, in company with Robert Edwards and Perry Rousseau, called on defendant at her rooming house in Marksville, on Sunday morning, September 20, 1930, with the view of buying the tools and plane attachment, especially the latter named article. Plaintiff testifies defendant told him "she had the tools belonging to the place and wanted $25.00 for the engine, bench saw and all the tools belonging to the place"; and plaintiff then asked if she had a plane and defendant replied that "she thought she had a tool like that," and he told her, "That's what I wanted." Plaintiff then, according to his testimony, asked if in case he should go out to the place and find what he wanted and bring it home whether it would be satisfactory for him to settle with her afterwards, and she told him she did not know, but for him to see Mr. Winston Joffrion, her lawyer, and whatever Mr. Joffrion told him about it would be satisfactory to her. Plaintiff then went immediately to Mr. Joffrion who, plaintiff testifies, assured him it would be all right. Mr. Joffrion, testifying in this connection, says plaintiff asked him if Mrs. Davis (defendant) "could sell him an engine, bench saw, plane and tools located on the Davis estate at Lake Long,"

and that he advised plaintiff that "she could pass a legal title to him and that anything she did would be all right."

During the afternoon of the day the conversations as above related took place, plaintiff, in company with Robert Edwards, went to the Davis home place, and looked at the property, made a list, according to his and Edwards' testimony, of the various tools he found, and the next morning called on defendant at Marksville, and (quoting) "told her about all the tools I seen and she said it was all right, but I told her she didn't have no plane like I wanted and that was a valuable tool, and I would give her $20.00 for the gasoline engine, bench saw and all the tools belonging to the place, which she accepted."

Robert Edwards, on this point, testified that defendant said (quoting) "All the tools that belonged to Mr. Davis, you can have them"—(having reference to such tools as she had acquired at her father's succession sale). Asked if defendant said she knew the exact tools shown on the list were there. Edwards answered, "She remembered a lot of them." Asked if she said she had made a check, he said "No." The list in question is document marked "Plaintiff A-1," filed in evidence. Edwards testified that defendant did not read the list.

Plaintiff, it appears, gave defendant a check for $20 in payment of the gasoline engine, the bench saw, and the tools. After signing and delivering the check, plaintiff mentioned that he had noticed some cypress lumber, also some wire, while on his trip to see about the tools, etc., and offered defendant, so he testified, $6 for the lumber and wire, and after some hesitancy defendant accepted the offer, and later, according to agreement, plaintiff left another check to cover this sum with Mr. Joffrion.

It appears that defendant was on the eve of returning to her home in Oklahoma at the time these transactions were had with plaintiff, and due to her hurry and anxiety to go she made the sales hurriedly and without giving much attention to their details, and in fact sold the property at quite a sacrifice.

Regarding delivery of the property sold, plaintiff, according to his testimony, in which he was corroborated by Edwards to a large extent, asked defendant as soon as the deals were made, where she would deliver the property, and she told him she could not deliver them because she was leaving right away for Oklahoma and was in a hurry to get away, but said she had a man, Mr. Henry St. Romain, down on the place, who would deliver them to plaintiff, or if he did not do so, to see Mr. Joffrion and he would make the delivery for defendant as her attorney. On cross-examination plaintiff was again asked if defendant agreed to go down to the place and make delivery there, and answered (quoting) "No. She said she was leaving. She says, 'I got my trunk packed,' She told me whenever I called for it, Mr. St. Romain would deliver it to me and in case he refused to see you" (Mr. Joffrion) "you would make them do it." This was during the early morning of Monday, September 21st.

Plaintiff sent his truck immediately from his home in Marksville, by Robert Edwards, to get the property. When he arrived Mr. St. Romain was not there, and Edwards, after telling Mr. St. Romain's son, who was there, what he had come for,

the young man refused to let Edwards take any of the tools, because he said his father owned some of the tools on the place and he did not know which ones belonged to him and which belonged to defendant. Edwards got the gasoline engine, bench saw and a cross-cut saw, and brought them back to plaintiff. Plaintiff reported to Mr. Joffrion what had happened, and the latter, to assist plaintiff, gave him a written order, which reads as follows:

"Please deliver to Mr. Forest Dupuis all the tools which belonged to the R. F. Davis Succession, as he purchased these from Mrs. Opal Davis Marshbank.
"W. K. Joffrion, Atty."

This order does not show to have been addressed to any one. Mr. Joffrion testifies plaintiff asked him for some evidence to show he had purchased the tools and lumber, and for that reason the order was given. Mr. Joffrion also testified that plaintiff told him that Mr. Henry Bordelon was the one who had prevented him from taking the tools and lumber.

Plaintiff testifies he sent his truck back Tuesday, the 22nd, and his driver returned without the tools and lumber and reported that Mr. Bordelon and Mr. St. Romain refused to deliver them. Asked if he was prevented from getting them by Mrs. Davis, plaintiff said he was not. He admitted that Mrs. Davis wanted plaintiff to get them. Again he admits that it was Mr. Bordelon who refused to permit him to remove them, Bordelon claiming that everything belonged to him, and that he had bought everything.

After making demand upon defendant to deliver these articles without success, plaintiff brought suit by attaching defendant's interest in the real property constituting the Davis place, to recover the value of the tools and lumber which had not been delivered to him. He alleged the tools were worth $45 and the lumber $55, and the wire $3, making a total valuation of $103 for the portion of his alleged purchase. The whole of the property purchased had cost him only $26. In addition to these apparently inflated claims, he also claimed various sums for alleged damages aggregating $130, making a total amount sued for of $233, all growing out of purchases, the aggregate prices of which amounted to only $26. This fact in itself is rather remarkable.

Mr. Henry St. Romain had been employed for some few months previous by defendant to stay on the premises as caretaker, but on Monday, the 21st of September, defendant settled with him in Marksville and dispensed with his further services. Therefore, it seems he had no authority to further represent defendant after that time. During that day it appears that defendant met Henry Bordelon at Mr. Joffrion's office, and there she sold to Bordelon the bees, bee hives, supers and everything connected with the bee industry on the place. Nothing was said by defendant to Mr. Joffrion at the time about the tools, engine, lumber, etc., which she was supposed to have sold to plaintiff earlier in that same day. Mr. Joffrion knew nothing of those sales having taken place, was told nothing, and no instructions given him regarding delivering them to plaintiff. It seems remarkably strange that if defendant had agreed to see to it that the tools, lumber and wire were delivered to plaintiff, as he contends that she did, that she would leave for Oklahoma immediately after being in Joffrion's office without saying something to him about it and instructing him to see to their delivery, especially

since she had just discharged St. Romain, which left no one but Joffrion to represent her.

From an examination of the testimony as a whole, we think the conclusions reached by the trial judge as expressed in his written opinion in the record, are correct, both from a legal and an equitable standpoint. We think the trades made by and between plaintiff and defendant when reduced to their final analysis, amounted to the sale of so many tools as plaintiff may find and get, which remained on the place for disposal when he should go after them, and that same would be at his risk, without any responsibility imposed upon defendant to make delivery or to warrant same. To use the language of the judge, "It was * * a question of 'take as and where' found, a sort of catch-as-catch-can proposition." Further quoting from the court's opinion: "There was at least constructive delivery within the meaning of Art. 2478 of the Civil Code, which provides, among other things, 'or, even by the bare consent of the parties,' which the court believes was the case here."

It is clear that defendant had but little knowledge of what was on the place in the way of tools, machinery, wire and little odds and ends of lumber. She was prompted to act upon what plaintiff came back and reported to her that he had found, and upon that representation sold it to him for him to go and get, such as it might be. If plaintiff misled defendant into selling something that he could not go and get, or was not there, or that Bordelon or someone else might impose an objection to, it was plaintiff's own fault, and he should not complain. Both defendant and Mr. Joffrion did what they could to enable plaintiff to

obtain possession of what plaintiff claimed he found on the place, that he listed and wanted. They did not stand in plaintiff's way, or try to prevent him from getting it. Mr. Bordelon, who had never represented defendant, was apparently the one who prevented plaintiff from obtaining the property.

Mr. Joffrion, on learning that plaintiff was unable to obtain possession of the lumber and wire, desisted from cashing the check which plaintiff had left with him. Joffrion later offered to return the check to plaintiff, which was refused, and upon the beginning of the trial he offered it to plaintiff and was refused, then tendered the amount in cash, which was likewise refused. The check was attached to defendant's answer for plaintiff's acceptance, and same is still attached and is in the record for plaintiff's acceptance.

We quote from the written opinion of the lower court, which dictum this court adopts, as follows:

"The tradition or delivery of movable effects takes place either by their real tradition, or by the delivery of the keys of the building in which they are kept; or, even by the bare consent of the parties if the thing cannot be transported at the time of the sale, or if the purchaser had them already in his possession under another title. Article 2478, R. C. C.

"The provisions of Articles 2503 and 2504, R. C. C., show clearly that while the seller, as one of the principal obligations must warrant title to the property sold, such an obligation may nevertheless be excluded entirely by the terms of the agreement of the parties; and when no warranty is agreed upon, the seller is bound for what results from his personal acts only, and no more. In this case, as relates to the obligation of delivery, the court is satisfied from the evidence that because

of the small price paid for the objects in question defendant did not oblige herself to make actual delivery."

We think the trial judge correct in this respect, also as to the demands of defendant for attorney's fees in reconvention. As stated in his opinion, "in cases like this one, there can be no recovery for attorney's fees for the dissolution of the writ of attachment, by reason of the fact that attorney's fees are only allowed in such cases when the writs improvidently issued, were dissolved either by bonding or by motion to dissolve, prior to the trial on the merits of the case." Mitchell v. Murphy, 131 La. 1040, 60 So. 677; Jones v. Monroe, 136 La. 148, 66 So. 760.

It appears that the court made no mention in its written opinion and the judgment in regard to the disposition of the check for $6 which plaintiff gave Mr. Joffrion for defendant as purchase price of the lumber and wire. It will be recalled that Mr. Joffrion, on learning of plaintiff's failure to obtain the lumber and nails, desisted from cashing the check or delivering same to defendant, but has attached it to and filed it with defendant's answer, and upon the beginning of the trial offered to return same to plaintiff.

Plaintiff is entitled to the return of check.

For the reasons assigned the judgment appealed from is amended by decreeing plaintiff to be entitled to the return to him of said check for $6, and as thus amended, the judgment is affirmed.

It is further decreed that plaintiff pay the costs of the appeal.